J^LEON A. CANNIZZARO, JR., Judge.
The defendant in this case, Joseph Harold, was convicted of carjacking after a jury trial. He is appealing his conviction. For the reasons set forth below, we affirm the conviction.
STATEMENT OF THE CASE
Mr. Harold was charged in a bill of information with one count of carjacking in violation of La. R.S. 14:64.2. He entered a not guilty plea at his arraignment. Mr. Harold then moved to suppress a statement he made to the police and to suppress the victim’s identification of him. After a hearing, these motions were denied. Subsequently, a twelve-person jury found him guilty as charged. He was sentenced to five years at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court judge requested that Mr. Harold be placed in either the About Face Program at the Orleans Parish Prison or, if he were transferred to the custody of the Department of Corrections, the intensive incarceration program. Mr. Harold is now appealing his conviction.
STATEMENT OF THE FACTS
At approximately 3:00 a.m. one morning, Lori Albaral, the victim in this case, left the Maple Leaf Bar in New Orleans, where she had been. listening to Lmusic with friends. She was returning home in her green 1999 Ford Explorer (the “Explorer”), when she got lost and found herself in the 1800 block of Joliet Street. As she was driving on Joliet Street, she slowed down as she approached a stop sign, rolled down the driver’s side window of the Explorer, and threw a cigarette and some ice from a cup out of the window. As she was doing this, a male approached, and he opened the victim’s car door and tried to pull her out of the Explorer. Ms. Albaral was resisting being pulled from her vehicle, when a second person, who was never identified, entered the Explorer from the passenger side and pushed her out’ of the vehicle. Mr. Harold jumped into the driver’s seat of the Explorer and began to accelerate and drive off while Ms. Albaral was still holding onto the door of the Explorer. As the victim was being dragged down the street, Mr. Harold said, “Let go, bitch, or I’ll kill you.” The victim was forced to release her grip on the door, and Mr. Harold drove away in the Explorer, leaving Ms. Albaral screaming hysterically in the street.
*264 Sandra Hudson, a resident of Joliet Street, was awakened by Ms. Albaral’s screams. When Ms. Hudson opened the door to her residence, Ms. Albaral approached her and requested assistance. Ms. Hudson called 911, but when she gave the telephone to Ms. Albaral, Ms. Albaral was unable to speak coherently, and the call was disconnected. A second call was placed, and Ms. Hudson advised the police that there was a frantic woman crying hysterically at her house.
New Orleans Police Department (“NOPD”) Officer Lawrence James responded to Ms. Hudson’s call. He found Ms. Albaral crying and hysterical. Her knees were scraped and bruised. Officer James elicited from Ms. Albaral a description of the Explorer, which she stated had Texas license plates, and of the man who had tried to pull her out of the Explorer. Ms. Albaral described the manjúas being black with dark or black, baggy clothing. Ms. Albaral indicated that she would be able to identify this man, because she had seen his face. She could not, however, identify the man who pushed her out of the driver’s side of the Explorer, because she had not seen his face well enough to identify him.
Officer James broadcast to other police officers a description of the Explorer and the man. NOPD Officers Fred Thompson and Harry Parker heard the broadcast right after they had seen a vehicle matching the description of the Explorer. The vehicle had just passed their police vehicle. Officers Thompson and Parker pursued the vehicle into the Calliope Housing Development in New Orleans. They then saw Mr. Harold jump out of the Explorer and run. Officer Parker chased Mr. Harold on foot, and Mr. Harold was apprehended without incident.
When he heard over his radio that a suspect had been found, Officer James drove Ms. Albaral to the scene of the apprehension. She immediately identified her Explorer. While the scene was being processed, Mr. Harold was taken out of a police car where he had been held, and he was illuminated with the headlights from the police car. Ms. Albaral was asked if she recognized Mr. Harold, and she immediately stated that he was the man who had pulled her from her car and threatened to kill her. Mr. Harold was arrested, and a search incident to the arrest was conducted.
The search revealed that Mr. Harold had several items in his pockets. Ms. Albaral was then shown the contents of Mr. Harold’s pockets, and she identified her car keys. Mr. Harold also had five dollars in currency when he was apprehended.
Ms. Albaral’s purse had been turned upside down inside the Explorer, and its contents had fallen out. The contents of the Explorer’s console were scattered, Rand Ms. Albaral’s wallet, which contained fifty dollars she was going to use to pay her child’s babysitter, was never recovered.
After Ms. Albaral had identified Mr. Harold as the man who tried to pull her out of the Explorer, NOPD Detective Jeff Walls was called to the scene, where he interviewed Mr. Harold, who indicated that he wanted to make a statement. The formal waiver of Mr. Harold’s constitutional rights in connection with the statement and the statement itself were both made at the police station. In the statement made by Mr. Harold, he denied carjacking anyone.
At trial Mr. Harold testified on his own behalf. He stated that, at approximately 3:00 a.m. on the night of the incident involving Ms. Albaral, he was waiting with a friend on the corner of Hickory and Leoni *265 das Streets in New Orleans for a bus that was scheduled to stop at 5:00 a.m. The lounge at the corner, the Bus Stop Lounge, was still open, and he had been in there. According to Mr. Harold, while he was standing on the corner, a “Jeep”, presumably the Explorer, drove around the block several times. Mr. Harold testified that a black male was driving the vehicle and that a white woman was sitting in the passenger seat. The vehicle then stopped, and the driver asked Mr. Harold if he had drugs for sale. When Mr. Harold said that he did not, the vehicle drove away, but it returned a short time later with only the black male driver inside. The driver asked Mr. Harold if he wanted to “buy the truck”[1] for twenty dollars. The defendant accepted the offer to “buy the truck” and gave the driver of the vehicle twenty dollars. Mr. I,.¡Harold was then given possession of the vehicle, and he drove it to the Calliope Housing Development, where, according to Mr. Harold, his aunt lived.
Mr. Harold claimed that he ran from the police after he jumped from the vehicle he had “rented”, because there was an outstanding warrant relating to a misdemean- or charge against him. Therefore, Mr. Harold ran to avoid arrest on that charge.
On cross-examination, Mr. Harold admitted that he did not know the driver of the “rented” vehicle, and he admitted that no agreement had been made between him and the driver of the vehicle regarding the return of the vehicle. Mr. Harold also stated that since his arrest, he had not spoken with the friend who was with him at the bus stop where he “rented” the vehicle. Mr. Harold’s attorney, however, stated in court that despite repeated attempts to obtain the friend’s testimony, the friend had refused to appear in court.
ERRORS PATENT
We have reviewed the record in this case to determine whether there are any errors patent. We have found none.
DISCUSSION
Mr. Harold’s sole assignment of error in this case is that the trial court erred by denying his motion to suppress Ms. Albaral’s identification of him. He argues that the identification procedure was impermissibly suggestive, because it was a one-on-one show up[2], during which Mr. Harold was handcuffed and presented for | ^identification at the scene where the Explorer was found in his possession.
Applicable Law
Article 703 of the Louisiana Code of Criminal Procedure provides, in relevant part, that “[a] defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.” In State v. Prudholm, 446 So.2d 729 (La.1984), the Louisiana Supreme Court discussed the requirements that must be met before an identification can be suppressed. The Supreme Court stated that “[a] defendant attempting to suppress an identification must prove both *266 that the identification itself was suggestive and that there was a likelihood of misiden-tification as a result of the identification procedure.” Id. at 738 (emphasis in original). See also State v. Haynes, 2002-1648, p. 4 (La.App. 4 Cir. 4/30/03), 847 So.2d 653, 656.
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court discussed five factors to be considered in evaluating the likelihood of misidentification of a suspect. These factors include the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ pri- or description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. 409 U.S. at 199-200, 93 S.Ct. at 382. See also Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Prudholm, 446 So.2d 729 (La.1984).
The fact that an identification could be considered suggestive is not determinative regarding the admissibility of the identification. The likelihood of a mis-identification is what violates due process, not suggestibility by itself. See State v. Thibodeaux, 98-1673, p. 20-21, (La.9/8/99), 750 So.2d 916, 932. Therefore, 17“reliability is the linchpin in determining the admissibility of identification.” Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253.
The Louisiana Supreme Court has considered the admissibility of one-on-one identifications in several cases. In State v. Bickham, 404 So.2d 929 (La.1981), the Supreme Court stated as follows:
One-on-one confrontations between a suspect and a victim, while not favored by the law, are permissible when justified by the overall circumstances. State v. Dunbar, 356 So.2d 956 (La.1978). Such identification procedures are generally permitted when the accused is apprehended within a short time after the offense and is returned to the scene of the crime for on-the-spot identification. A prompt in-the-field identification, under appropriate circumstances, promotes accuracy, as well as expediting the release of innocent suspects.
Id. at 934. See also State v. Williams, 420 So.2d 1116 (La.1982); State v. Frank, 344 So.2d 1039 (La.1977).
Additionally, the determination of whether a one-on-one show up is not im-permissibly suggestive such that the reliability of the identification is impaired is to be based on the totality of the circumstances surrounding the identification. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In State v. Dunbar, 356 So.2d 956 (La.1978), the Louisiana Supreme Court stated with respect to one-on-one show up identifications that “identifications made in this manner are permissible when justified by all of the circumstances.” 356 So.2d at 962. See also, e.g., State v. Dauzat, 364 So.2d 1000 (La.1978); State v. Frank, 344 So.2d 1039 (La.1977);
This Court has also approved one-on-one show up identifications where the identifications have been found to be reliable and the procedure did not create a substantial likelihood that the suspect would be misidentified. See, e.g., State v. Haynes, 2002-1648 (La.App. 4 Cir. 4/30/03), 847 So.2d 653; State v. Vicks, 2000J17008 (La.App. 4 Cir. 9/26/01), 798 So.2d 308; State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. Jackson, 94-0436 (La.App. 4 Cir. 6/29/95), 657 So.2d 1391.
In the Bickham case, the Louisiana Supreme Court enunciated the standard of review to be used by an appellate court in cases involving the admissibility of a one-on-one show up identification of a defen *267 dant. The Supreme Court stated that “.[a] trial judge’s determination on the admissibility of an identification should be accorded great weight and will 'not be disturbed on appeal unless the evidence reveals an abuse of discretion.” 404 So.2d at 934. See also State v. Haynes, 2002-1648 (La.App. 4 Cir. 4/30/03), 847 So.2d 653; State v. Offray, 2000-0959 (La.App. 4 Cir. 9/26/01), 797 So.2d 764.
Analysis under Biggers
It is necessary in the instant case to apply the analysis described in the Biggers case to determine whether the identification of Mr. Harold as the perpetrator of the crime against Ms. Albaral was properly admitted at Mr. Harold’s trial. First, we must determine whether Ms. Albaral had an opportunity to view Mr. Harold at the time the crime was committed. At trial in response to a question requesting that she describe the perpetrator of the carjacking, Ms. Albaral testified that “it was him, I saw his face. He was in my face. I’ll never forget that.” Ms. Albaral also testified that while the carjacking was in progress, she “focused” on the perpetrator’s face.
Mr. Harold argues, however, that Ms. Albaral did not meet the requirements of the first factor set forth in Biggers. His argument is based on the fact that Ms. Albaral was taken by surprise and removed from the Explorer so quickly that there was no opportunity to get a good view of the perpetrator. We find this argument to [ 3be without merit. Based on Ms. Albaral’s testimony that she focused her attention on the perpetrator’s face, that she will never forget the face, and that her view of his face was unobstructed, we find that Ms. Albaral clearly had an opportunity to view the perpetrator of the crime against her, and we conclude that the first of the five factors set forth in Biggers was satisfied.
We must next consider whether the degree of Ms. Albaral’s attention to the perpetrator during the crime was sufficient for her to identify the perpetrator, and we must also consider the accuracy of the description that Ms. Albaral gave to the police when they interviewed her prior to Mr. Harold’s apprehension. Ms. Albaral testified that although there were two perpetrators, she saw the face of only one. She also testified that the perpetrator she saw was not wearing anything that obstructed his face. Also, she testified that she “focused” on the perpetrator’s face while the crime was being committed.
Mr. Harold argues that because Ms. Al-baral’s encounter with the perpetrator was so brief and so harrowing, she could not have paid the degree of attention to the perpetrator that is required under Biggers. Further, Mr. Harold argues that the prior description of the perpetrator that Ms. Albaral had given to the police was too vague. We find no merit in these arguments. There is no reason to believe that Ms. Albaral’s view of the perpetrator, as he was trying .to pull her from the Explorer, was not sufficient for her to identify him. Also, Ms. Albaral correctly described Mr. Harold’s clothing to the police who responded to the 911 call that was made. Based on these facts, we find that the second and third factors set forth in Big-gers are satisfied.
The fourth factor that we must consider is the level of certainty demonstrated by Ms. Albaral when she identified Mr. Harold as one of the two |inpeople who committed the carjacking. Not only did Ms. Albaral identify Mr. Harold without any hesitation as soon as she saw him at the scene of his apprehension, she also was very certain that he was the person who tried to pull her from the Explorer. We find that the fourth factor that must be *268 met under Biggers was met in the instant case.
Finally, we must determine whether the length of time that elapsed between the crime and the identification was sufficiently short to enable Ms. Albaral to identify the perpetrator from memory. Because the entire criminal episode in the instant case, from the commission of the crime to Mr. Harold’s arrest, transpired in less than an hour, we find that the length of time between the crime and the identification was clearly short enough for the memory of Mr. Harold’s face to be fresh in Ms. Albaral’s mind. Therefore, the fifth factor in Biggers was satisfied.
Defendant’s Additional Arguments
Mr. Harold has questioned the reliability of Ms. Albaral’s identification, because he alleges that her memory was shown to be unreliable based on her varying descriptions regarding a handkerchief or bandana worn by the perpetrator. Ms. Albaral’s alleged failure to include the description of the bandana or handkerchief in the information she gave the police who responded to her 911 call and her inability to recall exactly where or how the perpetrator wore the bandana or handkerchief does not mean that her memory is faulty. She testified that her focus was on the perpetrator’s face, and it is reasonable to believe that in concentrating on the perpetrator’s face, she may have missed some details of what the perpetrator was wearing.
Mr. Harold also argues that identification of a handcuffed suspect in a one-on-one show up is inherently too suggestive for an identification to be reliable. In More particularly, he argues that because Ms. Albaral heard over the radio in the police car in which she was being driven to the scene of the apprehension that her Explorer had been found and that a suspect was in custody, she would naturally assume that the person she was asked to identify was the suspect. In State v. Nogess, 1998-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, this Court stated that “[tjhere is no merit to the argument that the identification procedure was rendered suggestive because the victim overheard the police radio call [stating that the police had detained two suspects for viewing].” 1998-0670, p. 6, 729 So.2d at 135.
There is nothing in the instant case to suggest that the radio transmission that was broadcast included any statement to the effect that the person apprehended was responsible for the carjacking. Additionally, there was no suggestion by the police that Ms. Albaral had to make an identification or that the person apprehended was the one who carjacked the Explorer. Therefore, we find no merit in Mr. Harold’s contention that because Ms. Albaral heard the announcement regarding his apprehension over the police radio, her identification of him was unreliable.
Admissibility of the Identification
We find that the trial court did not abuse his discretion in refusing to suppress the one-on-one show up identification of Mr. Harold. Not only did the trial court not abuse his discretion, Mr. Harold did not satisfy his burden of proof in showing that the identification procedure was unreliable or allowed for misidentification. See La.C.Cr.P. art. 703. Under the totality of the circumstances, the identification of Mr. Harold in the instant case was neither impermissibly suggestive nor unreliable.
| ^CONCLUSION
There was no error in the admission of the identification of the defendant at the trial. The judgment of the trial court is hereby affirmed.
AFFIRMED.

. Mr. Harold explained at trial that "buying the truck” is a term that is used to describe the rental of a vehicle for a certain amount of time, during which the person originally in the vehicle uses the "rental” payment to buy drugs.

. The term "one-on-one show up” refers to an identification procedure that takes place shortly after a crime is committed, usually at the scene of the crime or the apprehension of a suspect, whereby a victim is asked whether the victim recognizes a person suspected to be the perpetrator of a crime against the victim. This type of identification differs from identification through a photo line-up or a physical line-up, because only one individual is presented to the victim for identification.