PAUL A. BONIN, Judge.
|, James Brown was convicted by a jury of attempted first degree robbery, a violation of La. R.S. 14:27 and 14:64.1, for which he was sentenced to ten years at hard labor.[1] In his sole assignment of error, Mr. Brown argues that his conviction and sentence should be reversed because the trial court erred in denying his motion to suppress identification. In particular, Mr. Brown contends that the one-on-one show up procedure used to identify him was suggestive such that there is a substantial likelihood that he has been misidentified. For the reasons which follow, we find that Mr. Brown has not carried his burden of proof on the issue of suppression and, accordingly, affirm his conviction and sentence.
I
On the night of June 10, 2008, Mr. Carlos Deleon was leaving the Holiday Inn on Carondelet Street when he was attacked. His assailant approached him from behind, pulled his left arm towards his back, and put a sharp object against his neck. He was told to give up his wallet or else be killed. Mr. Deleon instinctively breached for his attacker’s arm and received a small laceration on his left ribcage in the ensuing struggle. Mr. Deleon called for help, and one of his co-workers, Leroy McDougal, responded in time to observe the assailant running away. Mr. Deleon and Mr. McDougal chased the assailant for approximately four blocks before he escaped. They then returned to the Holiday Inn garage to wait for the police, who had already been called. In the 911 tape of this call (which was introduced at trial and played for the jury without objection from the defense), an unidentified man told the dispatcher that a black man in a white shirt had just accosted Mr. Deleon with a knife. Officer Billy Tregle and his partner, Officer Brandon Ludwig responded to the dispatch call alerting them to the same: an attempted robbery had occurred near the corner of Gravier and Carondelet Streets by a black male in a white shirt armed with a knife. The officers set up a perimeter in the vicinity of Carondelet and O’Keefe Streets and then began perusing the vicinity of North Rampart Street. Within four minutes of the dispatch call, they observed a black male wearing a white shirt. Officer Ludwig claims to have observed the subject holding a knife in his left hand.
The officers stopped Mr. Brown approximately three to four blocks from the Holiday Inn, near the Gravier and O’Keefe Streets. Although there was no sign of blood on his hands, clothes, or knife, the officers arrested Mr. Brown, read him his rights, and informed him that he was under investigation for attempted armed robbery with a knife. About 30 to 40 minutes following Mr. Brown’s arrest, Mr. McDou-gal and Mr. Deleon were successively brought to Gravier and O’Keefe, where Mr. Brown had been held since the time he was apprehended, for one-on-one identifications under the supervision of Detective Sean McElrath. Detective McElrath explained that he conducted the show up identifications separately in |sorder to eliminate or minimize any collaboration between witnesses. The witness and the victim each identified Mr. Brown as the assailant within seconds, with the victim *978 noting that there was no doubt in his mind that Mr. Brown was his attacker.
II
A
In his sole assignment of error, Mr. Brown argues that his conviction and sentence should be reversed because the trial court erred in denying his pre-trial motion to suppress the one-on-one show up identification made by the victim.[2] A “one-on-one show up” concerns “an identification procedure that takes place shortly after a crime is committed, usually at the scene of the crime or the apprehension of a suspect, whereby a victim is asked whether the victim recognizes a person suspected to be the perpetrator of a crime against the victim.” State v. Harold, 03-0649, p. 6 (La.App. 4 Cir. 11/12/03), 861 So.2d 262, 265, n. 2. Mr. Brown asserts that the trial court’s failure to suppress the one-on-one show up identification allowed the prosecution to elicit unreliable in-court identifications at trial.
On review, we will not disturb a trial court’s determination on the admissibility of an out-of-court identification unless the record reveals an abuse of discretion. State v. Weathersby, 09-2407, p. 4 (La.3/12/10), 29 So.3d 499 (per curiam);[3] State v. Bickham, 404 So.2d 929, 934 (La.1981). Our review is not limited to the evidence adduced at the hearing on the motion to suppress, but it also extends to evidence adduced at the trial. State v. Lewis, 04-0227, p. 18 (La.App. 4 Cir. 9/29/04), 885 So.2d 641, 652.
| /fhe constitutional basis for a motion to suppress an out-of-court identification is found in the Due Process protections of the United States Constitution’s Fifth and Fourteenth Amendments. See Neil v. Biggers, 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In a motion to suppress, “the burden of proof is on the defendant to prove the ground of his motion ...” La.C.Cr.P. art. 703 D. Accordingly, the defendant bears the burden of proof on a motion to suppress an out-of-court identification. State v. Stovall, 07-0343, p. 16 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1084. The burden of proof does not shift to the prosecution as it does in the context of determining the admissibility of evidence of a purported confession or due to a defendant’s assertion that his rights have been violated after he has made an initial showing of a reasonable expectation of privacy and a warrantless search or seizure. See State v. Williams, 07-700, p. 8 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1109 (the prosecution must establish the admissibility of a purported confession by showing that it was voluntarily made), and State v. Bazile, 386 So.2d 349, 353 (La.1980) (on a motion to suppress, the burden of proof shifts to the prosecution to prove the admissibility of evidence once the defendant makes an initial showing that his rights have been violated by a warrantless search).
To prevail on such a motion, the defendant must show two things: that the identification procedure was suggestive, and, having substantiated that, he must show that there was substantial likelihood of misidentification as a result of the suggestive identification procedure. State v. Higgins, 03-1980, p. 19 (La.4/1/05), 898 So.2d 1219, 1231-32. Accordingly, even where the defendant has proven, or the *979 court has presumed, the suggestiveness of an identification process, to carry his burden the defendant must also show that there was a substantial likelihood of 15misidentification as a result of the procedure. State v. Prudholm, 446 So.2d 729, 738 (La.1984); see also State v. Robinson, 09-0922 (La.App. 4 Cir. 3/10/10), — So.3d -, 2010 WL 830964. It is the likelihood of misidentification that violates due process, not suggestibility by itself, and thus the mere fact that an identification is unduly suggestive is not sufficient to establish its inadmissibility. State v. Harold, supra, 03-0649 at p. 6, 861 So.2d at 266.
An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Thibodeaux, 98-1673, p. 20 (La.9/8/99), 750 So.2d 916, 932. In determining the likelihood of misidentification of a suspect, a court must look to the “totality of the circumstances” as informed by the five factors set forth by the United States Supreme Court in Neil v. Biggers, supra, 409 U.S. at 199-200, 93 S.Ct. 375. These factors include “the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ pri- or description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.” Id. Any corrupting effect of a suggestive identification is to be weighed against these factors. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
B
Mr. Brown particularly contests the reliability of the one-on-one show up identification made by the victim. Mr. Brown suggests that the improper show up identification vitiated Mr. Deleon’s ability to make an independent in-court identification of his assailant. One-on-one identifications are not favored by the law, but they are nevertheless permissible when justified by the overall circumstances. State v. Dunbar, 356 So.2d 956, 962 (La.1978). Such procedures Rare permissible when, for example, the accused is apprehended within a short time after the offense and is returned to the scene of the crime for immediate identification, because, under appropriate circumstances, a prompt in-the-field identification promotes accuracy and expedites the release of innocent suspects. Bickham, supra.
Here, Detective McElrath took Mr. Deleon from the crime scene to the location where Mr. Brown was being held in the back of a police car and asked if Mr. Brown was the man who attacked him. This procedure unduly focused Mr. Deleon’s attention on the defendant, and thus the identification procedure was clearly suggestive. But from our earlier observation, proof of suggestibility is a necessary, but not sufficient condition for the suppression of the identification. Thus, while we find that the identification procedure in this case was suggestive, we also find that Mr. Brown has not carried his burden of showing that the totality of the circumstances indicate the suggestive identification procedure was substantially likely to lead to his misidentification.
In the present case, Mr. Brown asserts that Mr. Deleon’s identification was unreliable for the following reasons: he did not have a sufficient opportunity to observe his attacker, his description was too vague, and the one-on-one identification was not conducted immediately after the crime. The trial court’s failure to suppress the identification, Mr. Brown argues, allowed the state to elicit an unreliable identification by Mr. Deleon at trial. Only Officer Ludwig, for the prosecution, testified at the hearing on the motion to suppress. Mr. Brown failed to carry his bur *980 den of proof at the motion to suppress and, having failed demonstrate any further indi-cia of unreliability at trial, he has not shown that the totality of the | ^circumstances require a finding that the one-on-one show up was substantially likely to result in misidentification.
Neil v. Biggers sets forth five factors to be considered in evaluating the “totality of the circumstances” in the likelihood of mis-identification of a suspect. Neil v. Biggers, supra at 382, 93 S.Ct. 375. Mr. Brown argues that Mr. Deleon had no opportunity to view his assailant because his attacker came at him from behind. However, Mr. Deleon testified at trial that after his assailant fled, he and Mr. McDou-gal followed the assailant for approximately four blocks. Mr. Deleon admitted that his assailant was, at all times, approximately one block’s distance from their relative position. Nevertheless, the record indicates that the victim’s pursuit lasted from eight to ten minutes. Thus, the record indicates that Mr. Brown had at least some opportunity to view his assailant at the time of the crime.
Although Mr. Deleon was attacked from behind, he and Mr. McDougal followed the assailant for 8 to 10 minutes after the attack. The third factor examines the accuracy of the witness’ prior description of the criminal. Mr. Deleon and Mr. McDougal described the assailant to police prior to Mr. Brown’s arrest as a black male wearing a white shirt, carrying a knife. Although this description is vague, it nonetheless matched Mr. Brown’s actual appearance at the time of his arrest. Accordingly, Mr. Brown has not demonstrated that either Mr. Deleon’s degree of attention or the accuracy of the description given was unreliable. The fourth factor, which Mr. Brown does not contest, examines the level of certainty displayed by the witness at the confrontation. Mr. Deleon identified Mr. Brown at the one-on-one show up within seconds and stated that there was no doubt in his mind that Mr. Brown was his attacker. Accordingly, Mr. Deleon displayed a high level of certainty in his identification.
| ¡¿Finally, we examine the length of time between the crime and the confrontation. State v. Biclcham requires that the show up identification occur within a short time after the offense. This temporal factor is generally satisfied when the identification occurs within an hour of the crime. See, e.g., State v. Valentine, 570 So.2d 533, 537 (La.App. 4 Cir.1990), and see also State v. Harold, supra, at n. 2 (finding that the final Biggers factor is satisfied when the entire criminal episode, from the time of the crime to the identification, takes place within an hour). Here, approximately 30-40 minutes transpired between the commission of the crime and the one-on-one show up identification, and Mr. Brown has not pointed to any other evidence or supporting authority to indicate that this delay is unreasonable.
In State v. Harold, supra, 2003-0649 at p. 10, 861 So.2d at 268, this Court addressed the temporal factor accordingly:
Because the entire criminal episode in the instant case, from the commission of the crime to Mr. Harold’s arrest, transpired in less than an hour, we find that the length of time between the crime and the identification was clearly short enough for the memory of Mr. Harold’s face to be fresh in Ms. Albaral’s mind. Therefore, the fifth factor in Biggers was satisfied.
As in Valentine and Harold, the record in the present matter demonstrates that the show up identification occurred within a sufficiently short time of the offense to satisfy the final Biggers factor.
*981 C
Returning our attention to the motion to suppress, we note that the testimony of Officer Ludwig was uncontradict-ed. Mr. Brown did not call any of the other available officers, and he did not call Mr. McDougal, the other witness. He did not attempt to call as a witness Mr. Deleon, the victim, which, of course, would have | Required a showing of good cause. See La. R.S. 46:1844 C(3). Further, Mr. Brown did not avail himself of the benefits of taking the stand at a suppression hearing. La. C.Cr.P. art. 703 E(l)[4] provides in pertinent part:
The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant’s testimony cannot be used by the state except for the purpose of attacking the credibility of the defendant’s testimony at the trial on the merits.
See also, e.g., State v. Johnson, 723 So.2d 407 (La.1998).
Officer Ludwig testified at the trial itself, as he had done at the suppression hearing. The jury also heard testimony from Detective McElrath, Officer Tregle, and Mr. Deleon, all of whom corroborated Officer Ludwig’s testimony from the suppression hearing. The prosecution — without objection by the defense — also played for the jury a tape of the 911 call made by an unidentified person on the night of the crime. The tape further supports the un-contradicted evidence that Mr. Deleon was attacked with a knife by a “black male in a white T-shirt.” The caller provided this description and maintained contact with the dispatcher to regularly report the fleeing attacker’s position. This brief 911 call ended after the caller observed two police units enter the area with their lights on. The contents of a 911 call are generally admissible as “nontestimonial statements” when they are “made under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.” Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).
From our review, which is not limited to the evidence adduced at the suppression hearing but also extends to evidence adduced at trial, see State v. h fíLewis, supra, we find that Mr. Brown has not shown that, under the totality of the circumstances, there was a substantial likelihood of his misidentification. Because we find that Mr. Brown failed to carry his burden of proof that the out-of-court identification was “substantially likely to lead to mis-identification,” we conclude that the trial judge did not err in denying Mr. Brown’s motion to suppress and admitting testimony of the out-of-court identification at trial.
Under such circumstances, the trial judge did not err in allowing the jury to weigh Mr. Deleon’s out-of-court identification of Mr. Brown. As the United States Supreme court noted in Manson v. Brathwaite, supra, 432 U.S. at 116, 97 S.Ct. 2243:
We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.
*982 III
We always review the record for errors patent. See La. C.Cr.P. art. 920(2). Mr. Brown was convicted of attempted first degree robbery, a violation of La. R.S. 14:27 and 14:64. La. R.S. 14:64.1 provides for a sentence upon conviction of imprisonment at hard labor for not less than three years, nor more than forty years, without benefit of parole, probation, or suspension of sentence. Subsection D(3) of La. R.S. 14:27 governs sentencing for persons found guilty of an attempt to commit a certain offenses, providing for sentence upon conviction in the same manner as for the offense attempted but that the imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense so attempted. See State v. Patterson, 259 La. 508, 512-513, 250 So.2d 721, 723 (1971). The trial court here failed to state that Mr. Brown’s sentence was to be |nserved without the benefit of parole, probation, and suspension of sentence[5] and thus imposed an illegally lenient sentence. An illegally lenient sentence can be noticed by the appellate court sua sponte. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; see also La. C.Cr.P. art. 882 A (“An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.”). Although the trial court did not restrict eligibility for probation, parole, or suspension of sentence as mandated by La. R.S. 14:64.1, subsection A of La. R.S. 15:301.1 deems that those requirements are contained in the sentence, whether or not they are imposed by the trial court. Moreover, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of the sentence. State v. Allen, 2010 WL 117681, p. 2 (La.App. 4 Cir. 1/13/2010), 30 So.3d 1024.
DECREE
Having found no merit in Mr. Brown’s sole assignment of error, we affirm his conviction for the crime of attempted first degree robbery. We also affirm his sentence of 10 years at hard labor without the benefit of parole, probation, or suspension of sentence, subject to credit for time served.
AFFIRMED.

. See review of error patent in Part III, infra.

. The defendant makes no arguments about Mr. McDougal's identification of the defendant. Although Mr. McDougal did not testify at trial, the jury heard testimony by Officer Ludwig and Detective McElrath about his one-on-one identification of Mr. Brown.

. See also State v. Taylor, 09-2781 (La.3/12/10), 29 So.3d 481 (per curiam).

. This statutory protection is the state equivalent to the federal procedure which prevents later use at trial as substantive evidence of a defendant’s testimony at a suppression hearing. See Simmons v. United States, 390 U.S. 377, 389-391, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

. Moreover, as the trial judge noted at sentencing, Mr. Brown has been convicted of a crime of violence which disqualifies him from eligibility for diminution of sentence for "good behavior.” See La. C.Cr.P. art. 890.1 B and La. R.S. 15:571.3 C(l)(q).