Judge Paula A. Brown
The State seeks supervisory review of the district court's November 5, 2018 judgment, which granted the motions to suppress identification filed on behalf of Defendants, Will Newsome and Aaron Henderson, and found no probable cause. Finding no abuse of the district court's discretion, we grant the State's writ application, but deny relief sought.
Factual and Procedural History
On January 15, 2016, the State charged Defendants with armed robbery with a firearm and aggravated flight from an officer, respective violations of La. R.S. 14:64.3 and La. R.S. 14:108.1 ; additionally, Defendant Newsome was charged with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. Defendants pled not guilty. Thereafter, attorneys *1225 for Defendants filed pre-trial motions, including a motion to suppress and a motion for preliminary examination. The district court held the motion to suppress and probable cause hearings on October 31, 2018 and November 5, 2018.
During the hearing, Detective Chad Cockerham testified that on November 19, 2015, the New Orleans Police Department ("NOPD") investigated a reported armed robbery that occurred at approximately 8:30 p.m. in the 800 block of Forstall Street. The victim, Lester Frey, reported that he was robbed by two males who fled the scene in a blue two-door Honda Accord, with damage to the front passenger side. Detective Cockerham relayed the victim told him that the Honda approached him as he walked down the 5400 block of Royal Street. The victim saw a light-skinned black male in the passenger seat as the vehicle passed. After the victim turned onto the 800 block of Forstall Street, a dark-skinned black male subject with dreads approached him. The dark-skinned black male walked on the other side of the street, then crossed the street, produced a silver and black handgun and demanded the victim's money. The victim said, "whoa, whoa, whoa, don't shoot." Another subject, a light-skinned male, appeared and rummaged through the victim's pockets, removing cash and keys. After removing his property, the subjects fled in the Honda.
Detective Cockerham clarified the victim "stated that the subject in possession of the firearm was a dark-skinned black male with braided hair" and "specifically stated that the subject had on either a black T-shirt or a black sweatshirt, unknown bottoms" and was "approximately six feet in height." Detective Cockerham said the victim described the light-skinned subject as between five-seven and five-eight in height and "believed that that subject as well had on ... [a]dark-colored shirt or sweatshirt" and unknown bottoms.
Detective Cockerham relayed that other NOPD officers gave chase to the Honda and its occupants after the report of the robbery. After the car came to a rest, several suspects fled the vehicle near the 5400 block of North Rampart. The officers set up a one-block perimeter at that location. They detained three subjects, later identified as Albert Hagan, Tyrone Holmes, and Defendant Newsome, who were walking in an open, grassy lot inside the perimeter. Defendant Henderson and another subject, Montel Lassassier,[1] were detained at another location outside the perimeter-in front of a residence located in the 5400 block of Burgundy. Detective Cockerham also confirmed that sometime after the detention of the subjects, the NOPD received 911 calls from a resident within the perimeter who reported noise from unknown persons emanating from under her house.
After Defendant Henderson, Defendant Newsome, and the other subjects had been taken into custody, Detective Cockerham relocated to the area where the subjects were being detained to view them. Detective Cockerham, upon viewing the five subjects, *1226 concluded that Defendant Newsome and Defendant Henderson matched the victim's physical descriptions. Detective Cockerham then spoke with the victim and "elected to have the victim relocated to Flood and Rampart Street for [him] to do a show-up identification." Detective Cockerham told the victim that he intended to take him to see if he recognized a vehicle; and after that, to see if the victim recognized two individuals. He said that they were going to the 5400 block of Rampart, the location where two subjects had fled from the Honda during the police pursuit. Detective Cockerham also admitted he informed the victim "that the robbers who robbed him had actually attempted to rob another man in the same area" that evening.[2]
The victim immediately identified the Honda. Detective Cockerham then radioed for an officer to bring out Defendant Newsome. Detective Cockerham told the victim that he was going to show him someone that matched somewhat the description he gave based on the "twists" in the suspect's hair. Defendant Newsome was hand-cuffed, placed about ten feet in front of a police cruiser, and stood next to a police officer, with his face illuminated by light from a nearby residence and the police utilizer spotlight. When asked if the victim said "it looks like him" before identifying Defendant Newsome as the dark-skinned subject who approached him with the firearm, Detective Cockerham testified he could not recall.
After Defendant Newsome's identification, Detective Cockerham had the police bring out Defendant Henderson. Defendant Henderson was viewed under conditions similar to Defendant Newsome. The victim identified Defendant Henderson as the light-skinned subject who rummaged through his pockets. Akin to Defendant Newsome's identification, Detective Cockerham could not recall any statements the victim made upon his identification of Defendant Henderson.
During cross-examination and after being shown body camera footage, Detective Cockerham admitted the victim told him during the show-up identifications that one of the robbers had something tied around his face during the offense.[3] Detective Cockerham could not recall which robber the victim referenced as having his face covered, he did not question the victim about this statement, nor was the statement included in his initial or supplemental *1227 report. Detective Cockerham also acknowledged that several light-skinned black men were involved in both robbery incidents.
Detective Cockerham did not present the other three detainees to the victim for identification, nor could he recall what they wore or provide a description of them. Because Defense counsel asserted some subjects were "darker-skinned" than Defendant Newsome, he later asked the district court to take judicial notice of Defendant Newsome's booking photograph-the booking photo showed the color of Defendant Newsome's skin and revealed he was wearing a black buttoned-down shirt, not a black t-shirt or black sweatshirt that Detective Cockerham said the victim had "specifically" described.
Detective Cockerham testified that the black and silver handgun recovered near the Honda after the chase tested negative for Defendant Newsome's DNA. He also confirmed the police did not recover cash or any other items taken from the victim on the persons of Defendant Newsome or Defendant Henderson.[4]
Shirley Daniels, who described Defendant Newsome as her ex-son-in-law and father of her some of her grandchildren, testified that she braided his hair on her porch on Saint Maurice Street for about three hours on the evening of the robbery. Her grandson, Tyrone Holmes (one of the detainees), was also present. She said Defendant Newsome had come from work and was wearing his work outfit-a black buttoned-up shirt and black pants. Ms. Daniels said after she fixed them something to eat, Defendant Newsome and Mr. Holmes left her home on foot. About twenty or thirty minutes later, she said Mr. Holmes called her to say that Defendant Newsome had been detained by the police.
At the close of the hearing, the district court found no probable cause "given all of the circumstance[s] surrounding this particular arrest." In granting the motion to suppress identification, the district court opined:
Noting in particular that the timeframe in which the detective testified to[;] noting ... Mr. Henderson [sic] and Mr. Newsome were both located [in] separate places under separate circumstances; [and] noting the descriptions that were given, especially with respect to Mr. Will Newsome being a "dark-skinned" black man [,] Mr. Newsome, I may wear reading glasses, but I don't think that you are a dark-skinned black man.
Noting the various issues with respect to the other subjects that were also detained with [Defendants]; I don't know with what reasonable suspicion, but I'm noting that there were other subjects detained.
With respect to the suppression of ID, the court grants the suppression of ID noting that because there were other subjects detained, and again noting that no reasonable suspicion has really been established for detention of those subjects[,] that the show ups that were conducted were not of subjects who were familiar to the alleged victim in this particular case[;] so I think that a different process for a lineup should have been conducted.
DISCUSSION
A district court's determination regarding the admissibility of an out-of-court identification and its ruling with regard to a motion to suppress an out-of-court *1228 identification will not be disturbed absent an abuse of discretion. State v. Briley , 2013-1421, p. 15 (La. App. 4 Cir. 10/1/14), 151 So.3d 633, 643. Generally, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La. C.Cr.P. art. 703(D). In order to suppress an identification, a defendant must meet a two-fold burden: the defendant must prove that the identification procedure was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Stovall , 2007-0343, p. 9 (La. App. 4 Cir. 2/6/08), 977 So.2d 1074, 1085 ; State v. Leger , 2005-0011, p. 59 (La. 7/10/06), 936 So.2d 108, 151.
An identification procedure is suggestive, if during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson , 386 So.2d 1374, 1377 (La. 1980). The facts of this case unquestionably demonstrate that the "show-up" identification procedure employed by NOPD was suggestive, in that it unduly focused attention on Defendants. Therefore, we must turn to the next prong-whether Defendants proved the suggestive identification presented a substantial likelihood of misidentification.
The U.S. Supreme Court, in Neil v. Biggers , 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), outlined five factors to be considered when determining whether a suggestive identification presented a substantial likelihood of misidentification: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." Manson v. Brathwaite , 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
With regards to the first and second factors-the victim's opportunity to view the assailants at the time of the offense and his degree of attention-the record reflects the robbery occurred at night in the 800 block of Forstall, where the lighting was minimal from the street lights. One of the perpetrators had his face covered. The robbery occurred fairly quickly and the victim's attention was divided between the two perpetrators in the brief encounter.
The third factor-the accuracy of the prior description- reveals some fluidity in Detective Cockerham's account of the description the victim gave of the perpetrators. As to Defendant Newsome, Detective Cockerham used the words "dreads," "twists," and "braids" interchangeably to reference the victim's description of the gunman's hairstyle. Detective Cockerham also testified the victim said the gunman specifically wore either a black t-shirt or sweatshirt, whereas Ms. Daniel's testimony and Defendant's booking photograph, of which the trial court took judicial notice, indicated Defendant Newsome wore a black buttoned-down shirt. The district court also took judicial notice that Mr. Newsome was not a "dark-skinned man." The victim could not describe the bottoms of either perpetrator. Moreover, Detective Cockerham did not consider that at least one of the perpetrator's faces was covered when he selected Defendants Newsome and Henderson to appear in the show-up identification. Neither Defendant Newsome nor Defendant Henderson were presented in the show-up line up with any covering on their faces before being identified by the victim.
The fourth factor-the level of certainty expressed by the victim at the show-up identifications-remains largely unknown.
*1229 Based upon police body camera footage, before the victim positively identified both Defendants, the victim told Detective Cockerham that one of the robbers had his face covered. This statement was not included in any of Detective Cockerham's reports. Detective Cockerham could not recall if the victim told him that the Defendants looked like the robbers before they were identified.
As to the fifth factor-the time between the crime and the confrontation-Detective Cockerham testified the victim identified Defendants approximately thirty minutes after the robbery.
The relatively short amount of time between the robbery and Defendants' identification has been found sufficient to support a reliable identification. See State v. Everridge , 523 So.2d 879, 881 (La. App. 4 Cir. 1988). However, the other four factors contain sufficient indicia of unreliability. In weighing these factors against the corrupting effect of the suggestive identification, we cannot say the district court abused its discretion in granting Defendants' motion to suppress.
Absent a reliable identification of Defendants and based on the totality of the facts, which included, but were not limited to: (1) police officers did not describe or identify the number of occupants who fled the Honda during the police pursuit; (2) Defendants Newsome and Henderson were detained in different locations with different persons; (3) no cash or other robbery items were found on Defendants; (4) other 911 calls from a resident within the perimeter of noise from unknown persons under her house at the time of Defendants' detention; and (5) no DNA evidence connected Defendants to the robbery, we also find no abuse of the district court's discretion in finding no probable cause.
CONCLUSION
The writ application is granted. We find no abuse of the district court's discretion in granting Defendants' motions to suppress and finding no probable cause. Accordingly, the relief the State seeks is denied.
WRIT GRANTED; RELIEF DENIED
LOBRANO, J., DISSENTS AND ASSIGNS REASONS.
I respectively dissent from the majority's writ disposition that affirmed the district court's judgment suppressing the out of court, "one-on-one show up" identifications of the defendants, Will Newsome and Aaron Henderson ("Defendants"). I find that the district court erred; thus, I would grant the writ filed by the State, vacate the judgment suppressing the identifications and the finding of no probable cause, and remand for further proceedings.
From my review, I find that Defendants failed to prove, under the totality of the circumstances, that there was a substantial likelihood of their misidentifications. The district court abused its discretion in granting Defendants' motion to suppress and not allowing the admission at trial of the out-of-court, "one-on-one show up" identifications. The lower court and the majority placed an undue burden of proof on the State, which is not required at a pre-trial hearing on a motion to suppress an identification. See La. C. Cr. P. art 703 (D).
An out-of-court "one-on-one show up" concerns "an identification procedure that takes place shortly after a crime is committed, usually at the scene of the crime or the apprehension of a suspect, whereby a victim is asked whether the victim recognizes a person suspected to be the perpetrator of a crime against the victim."
*1230 State v. Brown , 09-0884, p. 3 (La.App. 4 Cir. 3/31/10), 36 So.3d 974, 978, quoting State v. Harold , 03-0649, p. 6 (La.App. 4 Cir. 11/12/03), 861 So.2d 262, 265, n. 2. "Such procedures are permissible when, for example, the accused is apprehended within a short time after the offense and is returned to the scene of the crime for immediate identification, because, under appropriate circumstances, a prompt in-the-field identification promotes accuracy and expedites the release of innocent suspects." Brown , 09-0884, pp. 5-6, 36 So.2d at 979.
This court, however, has rejected the idea that one-on-one identifications are suggestive per se or inherently suggestive. In State v. Green , 10-0791, pp. 8-9 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 580, we recognized that one-on-one identifications are generally not favored, although such identification procedures are permissible under certain circumstances where a "substantial likelihood of misidentification" is not present:
One-on-one identifications are permissible, for example, when the accused is apprehended within a relatively short period of time after the occurrence of the crime and is returned to the scene for immediate identification. Immediate confrontation assures the reliability of the identification-given that the perpetrator's appearance is fresh in the witness's mind-lessens the possibility that the perpetrator's clothes or appearance will be changed, and insures early release of innocent subjects. However, a one-on-one identification procedure is not suggestive per se. Thus, it necessarily follows that a one-on-one identification does not unduly focus the witness's attention on the accused, per se.
In addition to suggestiveness, a defendant must prove that there was a substantial likelihood of misidentification as a result of the identification procedure. Despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a "very substantial likelihood of irreparable misidentification." [Citations omitted.]
In Brown , 09-0884, p. 4, 36 So.3d at 978, we stated:
The constitutional basis for a motion to suppress an out-of-court identification is found in the Due Process protections of the United States Constitution's Fifth and Fourteenth Amendments. See Neil v. Biggers , 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In a motion to suppress, "the burden of proof is on the defendant to prove the ground of his motion ..." La.C.Cr.P. art. 703 D. Accordingly, the defendant bears the burden of proof on a motion to suppress an out-of-court identification. State v. Stovall , 07-0343, p. 16 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1084. The burden of proof does not shift to the prosecution as it does in the context of determining the admissibility of evidence of a purported confession or due to a defendant's assertion that his rights have been violated after he has made an initial showing of a reasonable expectation of privacy and a warrantless search or seizure. See State v. Williams , 07-700, p. 8 (La.App. 4 Cir. 2/13/08), 977 So.2d 1101, 1109 (the prosecution must establish the admissibility of a purported confession by showing that it was voluntarily made), and State v. Bazile , 386 So.2d 349, 353 (La.1980) (on a motion to suppress, the burden of proof shifts to the prosecution to prove the admissibility of evidence once the defendant makes an initial showing that his rights have been violated by a warrantless search).
*1231 To prevail on such a motion, the defendant must show two things: that the identification procedure was suggestive, and, having substantiated that, he must show that there was substantial likelihood of misidentification as a result of the suggestive identification procedure. State v. Higgins , 03-1980, p. 19 (La. 4/1/05), 898 So.2d 1219, 1231-32. Accordingly, even where the defendant has proven, or the court has presumed, the suggestiveness of an identification process, to carry his burden the defendant must also show that there was a substantial likelihood of misidentification as a result of the procedure. State v. Prudholm , 446 So.2d 729, 738 (La.1984) ; see also State v. Robinson , 09-0922 (La.App. 4 Cir. 3/10/10), --- So.3d ----, 2010 WL 830964. It is the likelihood of misidentification that violates due process, not suggestibility by itself, and thus the mere fact that an identification is unduly suggestive is not sufficient to establish its inadmissibility. State v. Harold , supra , 03-0649 at p. 6, 861 So.2d at 266.
Under Manson v. Brathwaite , 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification include: 1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.
In this case, applying the Manson factors, no substantial likelihood of misidentification exists as a result of the one-on-one identification procedure. It is undisputed that the victim got a good look at his assailants. Although the robbery took place at night, it is uncontroverted that the area outside the victim's home was equipped with lighting that allowed the victim to get a good look at the perpetrators' faces such that the likelihood of misidentification was not substanital. Defendants fit the description provided by the victim who also positively identified the abandoned Honda Accord as the vehicle used in the commission of the robbery. He further identified Newsome (dark-skinned black male with braided hair) as the person who pointed a gun in his face demanding his belongings and Henderson (lighted-skinned male) as the person who had rummaged through his pockets. The victim was certain Defendants were the perpetrators of the robbery, and the time between the crime and the identification, approximately 30 minutes, was short enough for memory of the perpetrators' appearance to be in his mind. All of these factors establish that the identifications of Defendants were reliable and no substantial likelihood of misidentification was present.
Under such circumstances, the district court erred in not allowing a jury to weigh the victim's out-of-court identifications of Defendants. As the United States Supreme Court noted in Manson v. Brathwaite , supra , 432 U.S. at 116, 97 S.Ct. 2243 :
We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.
Brown , 09-0884, p. 10, 36 So.3d at 981.
Thus, I find that the district court erred in granting Defendants' motion to suppress.
*1232 I would grant the State's writ, vacate the judgment suppressing the identifications and the finding of no probable cause, and remand for further proceedings.

Detective Cockerham initially testified that four people were detained in the grassy lot. He said he learned Defendant Newsome had exited the perimeter and had been detained after Defendant Newsome had attempted to enter the 5400 Burgundy Street residence without permission. However, defense counsel introduced body camera footage from other officers wherein the aunt of Montel Lassassier stated that Mr. Lassassier lived at 5400 Burgundy Street. Detective Cockerham did not have on a body camera. After Detective Cockerham viewed the body camera footage, he agreed with defense counsel's statement that the body camera footage indicated Mr. Lassassier and Defendant Henderson were detained while exiting, not entering, the 5400 Burgundy Street residence.

Detective Cockerham testified that approximately five minutes after the victim's reported robbery, a second robbery incident was reported in the same area at 6122 Dauphine Street. The second victim, Conrad Bailey, also referenced a blue Honda used in his robbery attempt. Mr. Bailey described the perpetrator as a tall, skinny light-skinned black male, wearing a gray sweatshirt and holding a black and silver gun. The perpetrator had on blue or black pants, a gray leather cap, and had his shirt pulled up over his face. The perpetrator did not take any items from Mr. Bailey. He ran back to the Honda and got in the passenger seat after Mr. Bailey stated that neither he nor his companion had their wallets. Detective Cockerham verified that Mr. Bailey did not identify Defendant Henderson, who was presented in a similar show-up identification, as the person who tried to rob him. However, Mr. Bailey did identify the Honda. Sometime later, Mr. Bailey said he knew Defendant Newsome and excluded him as the robber. The district court sustained the State's objection to defense counsel's attempt to have Mr. Bailey testify at the motions hearing. The State agreed that Mr. Bailey and the victim in the present matter "described two totally different people;" consequently, the State ultimately determined the robberies were two separate incidents and did not charge Defendants herein with the robbery of Mr. Bailey.

Detective Cockerham initially testified that only Mr. Bailey, the second robbery victim, stated that the robber had something tied around his face. See fn. 2.

Detective Cockerham testified on direct examination that the victim told him the robbers took cash and his keys. Upon cross-examination, he acknowledged that his report documented that the robbers took only an unspecified amount of cash.