LOBRANO, Judge.
Defendant, Jerry Ward, was charged by grand jury indictment with the second degree murder of David Anthony Honor, a violation of La.R.S. 14:30.1. At his arraignment, defendant pled not guilty. Defendant was tried by a twelve member jury on September 15, 1987 and was found guilty as charged. On December 11, 1987, defendant filed a motion for a new trial based on the recantation of testimony by a state witness. The motion was denied on December 14, 1987. On December 17, 1987, defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
FACTS:
On June 6, 1986, at approximately 11:30 p.m., Gregory Newman was driving down Dorgenois Street. As he approached the comer of Dorgenois and Thalia Streets, he observed defendant and David Honor engaged in an argument. Honor walked away from defendant. Defendant followed him, pulled out a pistol and shot him in the back several times. Defendant then walked over to Honor, who was lying in the street, reloaded the pistol and shot him several more times. Defendant then fled the scene.
Newman attempted to stop his car to assist Honor but was stopped by his frightened girlfriend. He then drove to the nearest police station where he related what he had witnessed and gave a description of defendant.
On June 14, 1986, pursuant to the police investigation, Detective Donald Hoyt conducted a photographic line-up. After viewing defendant’s photograph along with five other photographs, Newman identified defendant as the man who shot Honor. The police obtained an arrest warrant for defendant. He was arrested in Oakland California, and waived extradition.
Approximately ten months later, Rene Garrison then incarcerated, wrote a letter to the district attorney’s office offering to testify against defendant. Garrison claimed he was present at the time of the shooting and witnessed defendant murder Honor.
At trial the state presented both Newman and Garrison as eye witnesses to the murder. Newman testified to the same facts that he related to police the night of the murder. He made an in-court identification of defendant as the perpetrator. Detective Hoyt corroborated Newman's testimony.
Garrison’s testimony was essentially the same as Newman’s. He testified that he was standing on the side of the Rightway Grocery Store on Dorgenois Street with a friend on the night of the murder. He saw Honor and defendant standing about twenty feet away arguing. He stated that he knew defendant from training pit bulls. He testified that during the argument, Honor turned and walked away from defendant. Defendant followed Honor, pulled out a chrome pistol and shot Honor in the back twice. Defendant then stood over Honor and shot him several more times. Defendant reloaded the pistol and shot Honor six more times. Defendant then fled through a hole in a nearby fence.
Garrison stated he decided to come forward and testify to ease his conscience because he had never seen anything so brutal and gruesome. In addition, he testified that he had a long felony conviction record and that he was not offered or given anything from the prosecution in exchange for his testimony.
In addition to Newman and Garrison, the state presented Dr. Monroe Samuels, a pathologist, who testified that Honor sustained multiple gun shot wounds to the back, chest, heart, legs and arms. Tests on Honor revealed a blood alcohol level of .18, but no presence of drugs.
Officer Leontine Mullins testified that he was the first to arrive at the scene. Honor was still alive. He and his partner radioed for an ambulance. Honor was transported to Charity Hospital where he later died.
The defense presented two witnesses who testified that they were well ac *739 quainted with defendant and that they never knew him to wear his hair in the afro style described by Garrison and Newman.
Following his conviction, defendant filed a motion for a new trial based on Garrison’s recantation of his trial testimony. At the motion hearing, Garrison took the Fifth Amendment and refused to testify regarding his recantation. Thus, the evidence of recantation was limited to the testimony of attorneys Raleigh Ohlmeyer and Phil Johnson. They testified that Garrison told them in a taped interview that he was not an eye witness to the murder, but testified to that effect because the district attorney’s office threatened to reopen his case and increase his sentence if he did not cooperate. The trial court denied the motion.
Defendant appeals his conviction and sentence alleging the trial court erred in denying his motion for a new trial. We disagree.
Code of Criminal Procedure Article 851(3) provides in part:
“The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. The court, on motion of the defendant, shall grant a new trial whenever:
[[Image here]]
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;”
Article 854 sets out four requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant’s lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudhohm, 446 So.2d 729 (La.1984); State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing).
The trial judge’s application of these precepts to newly discovered evidence is entitled to great weight, and his denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion. See; State v. Clayton, 427 So.2d 827 (La.1982) (on rehearing); State v. Talbot, supra. (on rehearing).
Recantations of trial testimony should be looked upon with the utmost suspicion. State v. Tyler, 342 So.2d 574 (La.1977), cert. den. 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977); State v. Gray, 526 So.2d 1268 (La.App. 3rd Cir.1988). To refuse to grant a new trial on such a basis is not an abuse of discretion. State v. Clayton, supra. A recantation at a new trial is a confession to perjury which destroys the credibility of the witness. State v. Linkletter, 345 So.2d 452 (La.1977).
In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981); State v. Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978).
A review of the record indicates that Garrison’s off-the-record recantation does not exculpate defendant. Rather, he claims that he was at the scene, heard the shots and was told by others that it was defendant that shot Honor. Garrison was not the state’s sole eye witness. Gregory Newman’s testimony was very credible. He stated he was only a few feet away from the scene. He saw defendant shoot Honor. He reported the incident to police minutes after it happened and gave a description of defendant to the police. He positively identified defendant in a photographic line up and in court on the day of trial.
*740 Our examination of the record convinces us that the trial judge did not abuse his discretion by denying the motion for a new trial.
Garrison’s recantation is not so persuasive that it ought to produce a different verdict upon retrial.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.