| | | | |
|---|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2020-K-0056** | |

**VERSUS** *

**COURT OF APPEAL**

**NATHAN JACKSON AND** *
**TAJUAN MCKNIGHT**

**FOURTH CIRCUIT**

*

**STATE OF LOUISIANA**

\* \* \* \* \* \* \*


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 544-548, SECTION "SECTION K"
Honorable Hunter P. Harris, Judge, Pro Tempore
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Regina Bartholomew-Woods)



Diana Yu
Orleans Public Defenders
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF-RELATOR

Leon A. Cannizzaro, Jr
District Attorney
Scott G. Vincent
Assistant District Attorney
Parish of Orleans
619 S. White St.
New Orleans, LA 7019

      COUNSEL FOR DEFENDANT-RESPONDENT



      **WRIT GRANTED; REVERSED**
      APRIL 8, 2020

*RBW*

*RLB*

*SCJ*

Defendant-Relator, Nathan Jackson ("Defendant"), seeks supervisory review of the district court's December 18, 2019 ruling denying his motion to suppress an out-of-court identification. For the following reasons, we grant the writ, reverse the judgment of the district court and grant the motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2019, a motion to suppress hearing was held on Defendant's motion to suppress the out-of-court identification of the victim in this matter, identifying Defendant as one of the perpetrators of an aggravated assault.

Officer Kevin Nguyen ("Officer Nguyen"), assigned to the New Orleans Police Department's ("NOPD") Seventh District, testified that on December 18, 2018, he commenced an investigation into an alleged aggravated assault. Officer Nguyen explained that another officer called for assistance after the victim, Terilyn Frazier ("victim"), "flagged [him] down," stating that two black males "pulled a firearm" on her. Thereafter, Officer Nguyen stated that they located the only two

2

black males whom they believed to be the victim's assailants standing in the area where the assault took place.

Once the two individuals were apprehended, Officer Nguyen testified that "we did a show-up." Officer Nguyen explained that one of the apprehended individuals was in his police car and the victim came by in an unmarked vehicle, pulling up "about six-car length[s] away from [Officer Nguyen's] unit." At that point, Officer Nguyen took the suspect out of his vehicle, placed him behind his unit, and the victim, sitting in the unmarked police car, identified the suspect. Officer Nguyen testified that the "show-up ID" took place "maybe an hour or two" after he had spoken with the victim. Once the victim had identified both of the suspects as her assailants, the two were arrested.

On cross-examination, Officer Nguyen stated that the victim relayed that the incident occurred at an apartment complex and, after taking the victim's information, Officer Nguyen "relocated immediately" to the area described by the victim. Officer Nguyen testified that his body-camera was functioning throughout his investigation. Upon arriving at the apartment complex, Officer Nguyen and his partner located the two suspects at a nearby bus stop. One of the suspects, Tajuan McKnight ("McKnight"), fled. Defendant, on the other hand, did not flee; he was cooperative with respect to the investigation. No firearm was confiscated from Defendant. However, one of the officers who "chased down" McKnight, witnessed him "throw [out] a firearm."

The victim informed Officer Nguyen that she did not know the two black males that assaulted her at gunpoint. Upon questioning by the court, Officer Nguyen told the court that the victim stated that one of her assailants was wearing "a white hoodie" and the other was wearing "a black hoodie." However, after

2

watching his body-camera footage, Officer Nguyen corrected his testimony in this regard. He confirmed that the victim told him that one of the perpetrators was wearing a white hoodie and the other one was wearing orange. A white hoodie was found near the location where McKnight was apprehended.

Officer Nguyen testified that at the time the victim made her identifications, each of the suspects was in handcuffs and a uniformed police officer accompanied each. Upon questioning by the court, Officer Nguyen stated that the assault and identifications took place in the daytime.

After reviewing his body-camera footage, Officer Nguyen confirmed that the victim stated that both of her assailants were wearing hoodies. The victim provided no description of their facial features. Officer Nguyen stated that when the suspects were brought out for the victim to view them, neither were wearing hoodies. Further, Officer Nguyen recalled, after watching the footage that the victim, at one point, mentioned that she saw something orange.

A review of Officer Nguyen's body-camera footage evinces the victim explaining to Officer Nguyen that while she was driving her vehicle with dark-tinted windows, she observed both assailants turn toward her vehicle and retrieve weapons from their waistbands. Upon seeing this, the victim rolled down her window and informed the two men that she did not know who they were looking for, "but I'm not it." Thereafter, one of the men apologized and the victim drove away from the scene. The victim did not provide a physical description of her assailants, but stated that both wore hoodies; one was wearing a white hoodie and she remembered seeing something orange.

Officer Eddie Dema ("Officer Dema"), also assigned to the NOPD's Seventh District, testified that on December 18, 2018, he participated in the

aggravated assault investigation during which he was asked to place the victim in his vehicle for a "show-up" identification. Officer Dema stated that the "show-up" took place at approximately 10:00 a.m. and that the victim was approximately fifty (50) to sixty (60) feet away from the suspects when she identified them. Officer Dema's body-camera footage was played and after watching it, Officer Dema confirmed that the victim stated that she was having difficulty identifying her assailants because at the time of the assault they were wearing hoodies. Officer Dema further stated that the victim participated in three "show-ups." He recalled the victim stating something to the effect that one of her assailants was wearing orange.

A review of Officer Dema's body-camera footage corroborates his testimony. Though difficult to hear precisely what the victim stated, one can hear Officer Dema explain to another police officer that the victim was having difficulty identifying her assailants because, at the time of the "show-up" identification, they were not wearing their hoodies. The victim further informed that one of the assailants "had on white and one had on something orange." Later, the victim reiterated that it was hard to identify the assailants because they wore hoods when the encounter took place.

NOPD Officer Wayne Lewis ("Officer Lewis"), like Officers Nguyen and Dema, was assigned to the NOPD's Seventh District and also participated in the aggravated assault investigation. Officer Lewis testified that he spoke with the victim and then went in search of her assailants in the area where she reported that the incident had occurred. When he and his partner reached the pertinent area, they "observed two males, one wearing a black hoodie and one wearing a white hoodie." Officer Lewis recalled that the male in the white hoodie fled and the

4

other suspect "just stood there." Officer Lewis stated that the "show-ups" took place within an hour from the time the crime was reported.

On cross-examination, Officer Lewis's body-camera footage was played. Officer Lewis testified that the footage depicted him speaking with the victim who informed him that one of her assailants was wearing white and the other one was wearing orange. The victim did not state that either of her assailants was wearing a black hoodie. The victim also told Officer Lewis that both of her assailants were about Officer Lewis's height, which was six-feet tall.

A review of Officer Lewis's body-camera footage corroborates his testimony. Though difficult to hear, the victim informs Officer Lewis that one of her assailants was wearing white and "one of them maybe had on orange." She further stated that the perpetrators were approximately Officer Lewis's height, which was about six feet tall. Officer Lewis testified that when they apprehended Defendant, he was wearing a black hoodie; he was not wearing anything orange in color.

On February 13, 2019, the State filed a bill of information charging Defendant with aggravated assault with a firearm in violation of La. R.S. 14:37.4, possession of a firearm in a firearm-free zone in violation of La. R.S. 14:95.2, and resisting an officer in violation of La. R.S. 14:108. On February 28, 2019, Defendant appeared for arraignment and entered pleas of not guilty. On December 18, 2019, a hearing was held with respect to Defendant's motion to suppress the victim's out-of-court identification. Following the hearing, the court denied Defendant's motion, stating that the complaint "goes to the weight of the evidence." It is from this ruling that Defendant filed the instant writ application.

5

## DISCUSSION

*Assignment of Error*

Defendant argues that the trial court erred when it denied his motion to suppress identification because the NOPD Officers conducted an inherently unduly suggestive show-up identification procedure wherein the victim repeatedly expressed uncertainty in her identification of Defendant and Defendant did not remotely match the description initially given by the victim.

*Standard of Review*

A district court's ruling on a motion to suppress identification is reviewed for abuse of discretion. *State v. Bickham*, 404 So.2d 929, 934 (La. 1981); see also *State v. Briley*, 13-1421, p. 15 (La. App. 4 Cir. 10/1/14), 151 So.3d 633, 643. On a motion to suppress identification, it is the defendant, not the State, who bears the burden of proof. La. C.Cr.P. art. 703(D). Defendant's burden is two-fold. First, Defendant must prove that the identification procedure was unduly suggestive. If Defendant carries this initial burden, Defendant must then also prove that the unduly suggestive procedure created "a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977 (internal citations omitted).

*Identification is Unduly Suggestive*

"An identification procedure is [unduly] suggestive, if during the procedure, the witness' attention is unduly focused on the defendant." *State v. Newsome*,

6

2018-1075, p. 7 (La. App. 4 Cir. 2/27/19), 265 So.3d 1223, 1228, citing *State v. Robinson*, 386 So.2d 1374, 1377 (La. 1980). In the instant matter, the "show-up" identifications are similar to the "show-up" identifications employed in *Newsome, supra*. In this case, as in *Newsome,* police presented each defendant to the victim individually, after each was taken from the back of a police vehicle. Each defendant remained handcuffed with an officer standing beside him. Taken the facts of this case as a whole, it is unquestionable that the "show up" identification procedure employed by the NOPD Officers was unduly suggestive, in that it unduly focused the victim's attention on Defendant.

The next issue to be resolved is whether the unduly suggestive identification created "a very substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 116, 97 S.Ct. at 2254.

***Suggestive Identification Presenting Substantial Likelihood of Misidentification***

The U.S. Supreme Court, in *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), outlined five factors to be considered when determining whether a suggestive identification presented a substantial likelihood of misidentification: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. Assessed in their totality, these factors are weighed against "the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

With respect to the first and second factors, despite the fact that the crime happened in the day time during a clear day, the victim did not provide a physical

7

description of the perpetrators' faces, because they were wearing hoodies. The victim could not provide the officers with a description of any facial features. The victim complained to Officer Dema that she was having difficulty identifying the assailants because they had on hoodies at the time of the assault. Moreover, despite the fact that there is no account as to how long the encounter between the victim and the perpetrators lasted, it should be noted that based on the fact that there were two perpetrators, the victim's attention was divided between the two. This division of attention is apparent from the discrepancy in the victim's descriptions of her assailants. The victim was able to state that one of her assailants was wearing a white hoodie, and as to the other assailant, the best she could manage was "maybe [he] had on orange." Defendant was wearing a black hoodie at the time he was apprehended and the victim never told any of the officers that one of the perpetrators wore a black hoodie.

The third factor—the accuracy of the victim's prior description—reveals that Defendant did not fit the victim's prior account. Again, the victim noted that both of her assailants had on hoodies and when Defendant was apprehended by police he was wearing a hoodie. However, while the victim said one of the perpetrators was wearing a white hoodie, and that fit the description of McKnight, according to the victim the other perpetrator was "maybe" wearing orange. Officer Lewis testified that Defendant was not wearing anything orange in color; instead, he was wearing a black hoodie and the victim never described either one of her perpetrators as wearing a black hoodie. Further, the victim estimated that both perpetrators were approximately six-feet tall; Defendant is only five-feet and six inches tall. Additionally, the victim reported that both perpetrators retrieved

weapons from their waistbands. Defendant did not possess a firearm when he was apprehended by police.

The fourth factor, the level of certainty expressed by the victim at the show-up identifications, weighs against a finding that the identification was reliable. As reflected in the body-camera footage, the witness expressed doubt regarding her ability to identify the perpetrators. She was unable to provide a physical description and complained that she was having difficulty because, at the time of the assault, the perpetrators were wearing hoodies.

Another factor to be taken into consideration in measuring the reliability of the victim's "show-up" identification, is the distance from which the identification was made. Officer Nguyen testified that the victim was "about six-car length[s] away" from the suspects, while Officer Dema estimated the distance to be fifty (50) to sixty (60) feet. It would not be unfounded to question the accuracy of an identification made from such a distance.

Finally, with regard to the fifth factor, the time between the crime and the show-up identification, the testimony of the officers varies. Officer Nguyen estimated that the "show-up ID" took place "maybe an hour or two" after he had spoken with the victim. Officer Lewis stated that the "show-ups" took place within an hour from the time the crime was reported. This estimate, however, does not accurately reflect the time between the actual crime and the out-of-court identification. The victim reported the incident to a different police officer, Officer Valencia, who, in turn, reported it to Officers Nguyen and Lewis. As such, there is some lag time between when the assault actually occurred and when the officers spoke with the victim. Considering the lag time between when the incident was reported to Officers Nguyen and Lewis and when it actually occurred, along with

9

the discrepancies in the estimates provided by the two officers, an approximate calculation is that the out-of-court identifications were made over an hour after the crime occurred.

Such a time lapse, generally, is not too long to undermine an otherwise reliable identification. *See State v. McKinney,* 455 So.2d 1235, 1238 (La. App. 4 Cir. 8/31/84) (three-hour delay from the time of the crime to the time of the out-of-court identification deemed sufficient to uphold identification); *but see State v. Brown,* 09-0884, p. 8 (La. App. 4 Cir. 3/31/10), 36 So.3d 974, 980 (the temporal factor delineated in *Biggers, supra,* "is generally satisfied when the identification occurs within an hour of the crime"). However, the other four factors contain sufficient indicia of unreliability. In weighing these factors against the corrupting effect of the suggestive identification, we find that the district court abused its discretion in denying Defendant's motion to suppress the out-of-court identification.

Absent a reliable identification of Defendant and based on the totality of the facts which included, but were not limited to: (1) victim was unable to provide any facial description of Defendant; (2) victim identified perpetrators as being six feet tall and Defendant is only 5 feet 6 inches tall; (3) victim identified two perpetrators: one wearing a white hoodie and the other wearing something orange—Defendant was wearing a black hoodie at the time of his apprehension by officers; (4) victim stated that two perpetrators brandished guns that they pulled from their waistband; a weapon was never recovered from Defendant's person; and (5) victim was asked to identify the perpetrators from a distance of between fifty (50) and sixty (60) feet away.

After reviewing the facts and record, we find that based on the totality of the circumstances the identification procedure was unduly suggestive. As such a substantial likelihood of irreparable misidentification was created as a result of the identification procedure.

## CONCULSION

For the reasons aforementioned, we find that the district court erred when it denied Defendant's motion to suppress identification. Accordingly, Defendant's writ is **GRANTED**, the judgment of the district court is **REVERSED**, and the motion to suppress is **GRANTED**.

**WRIT GRANTED; REVERSED**